# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Abdul Gafoor Akhouzada,<br>    Detainee,<br><br>Abdul Salam,<br>    As the Next Friend of Abdul Gafoor<br>    Akhouzada<br><br>Petitioners,<br><br>v.<br><br>GEORGE W. BUSH, et al.,<br><br>Respondents. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)    Civil Action No. 06-cv-01685 |

## PETITIONERS' OPPOSITION TO RESPONDENTS' MOTION TO DISMISS

Petitioners Abdul Gafoor Akhouzada and Abdul Salam through their attorneys, in response to Respondents' April 19, 2007 Motion to Dismiss ("Motion to Dismiss"), respectfully request that this Court (i) deny Respondents' Motion to Dismiss their habeas actions, and (ii) hold this action in abeyance pending Petitioners' exhaustion of their remedies in the Court of Appeals under the Detainee Treatment Act of 2005[1] ("DTA") and the filing in the Supreme Court of a renewed petition for certiorari to review the Court of Appeals' jurisdictional holding in *Boumediene v. Bush*[2] ("*Boumediene I*"), or the Supreme Court's resolution of the same jurisdictional issue as presented in a pending

---

[1]  Detainee Treatment Act of 2005, Pub. L. No. 109-148, 119 Stat. 2680 (2005).

[2]  *Boumediene v. Bush*, 476 F.3d 981 (D.C. Cir. 2007).

original habeas corpus petition filed in *In re Ali*, No. 06-1194, which challenges the MCA

jurisdictional holding of the Court of Appeals, and (iii) in the event that the Supreme

Court determines it lacks jurisdiction over the action, transfer this habeas action to the

Court of Appeals pursuant to 28 U.S.C. § 1631 for consolidation with Petitioners' DTA

actions (to be filed shortly herewith).

Respondents argue that dismissal of this habeas action is consistent with the

established law of this Circuit as well as the clear intent of Congress.   Respondents fail

to recognize that the constitutionality of the Military Commissions Act of 2006[3]

("MCA") is still in dispute and being actively litigated.   In the Supreme Court's denial of

certiorari in *Boumediene v. Bush ("Boumediene II"),*[4] three Justices state in the dissent

that the habeas-stripping provision of the MCA is a "significant

[question]…warranting…review."[5]   Two more Justices stated that they could not review

the issue "at this time"[6] because Petitioners had failed to exhaust alternative remedies.[7]

In other words, five Justices have signaled a willingness to rehear the issues raised in

*Boumediene I* once alternative remedies have been exhausted.

This is far from a case of first impression for the courts.   In a prior case, the Su-

preme Court held that in habeas actions where alternative remedies exist, and where there

---

[3]  Military Commissions Act of 2006, Pub. L. No. 109-366, 120 Stat. 2600 (2006).

[4]  *Boumediene v. Bush*, 127 S. Ct. 1478 (2007).

[5]  *Id.* at 1480..

[6]  *Boumediene II*, 127 S. Ct. 1478 (2007).

[7]  It is the contention of habeas counsel that the alternative remedies provided under the DTA fails to meet the standard required under *I.N.S. v. St. Cyr*, (533 U.S. 289 (2001) et sequelae to lawfully suspend habeas corpus.

is a danger of dismissal of the underlying habeas action by statute while those remedies are being exhausted, the original court of the pleading would be abusing its discretion were it *not* to stay dismissal pending abeyance of said exhaustion of remedies, provided there is good cause, potentially meritorious claims, and the absence of unreasonable delay.

Respondents would have this court believe that it has no choice but to apply the holding in *Boumediene I* to this habeas action.   But this court is not bound by the decision *Boumediene I*; this court has the discretion to stay this action while the jurisdictional issues continue to be litigated.   Respondents argue that this court has no jurisdiction to hear Petitioners' habeas action.   It is well established that courts have jurisdiction to determine their own jurisdiction.   Nor has the Court of Appeals even issued its mandate in *Boumediene I*.   The *Boumediene* petitioners have asked the court to stay the issuance of its mandate pending the completion of DTA proceedings and the filing of a renewed petition for certiorari to review the court's jurisdictional ruling in *Boumediene I*.   The court has not yet acted on the motion.   This case is presently before the D.C. Circuit on an interlocutory appeal (No. 05-5398) and the government has moved to dismiss in that case.

While questions of jurisdiction are being decided, as they are here, the court in question still has the authority to issue orders maintaining the status quo of the petition. In fact, two of the Justices in the denial of certiorari in *Boumediene II* specifically charged the courts with preventing any actions by Respondents that would damage Petitioners' ability to exhaust their remedies under the DTA.[8]   Dismissal of this case could

---

[8] The Justices specifically expressed concern regarding maintenance of the status quo during the litigation: "Were the Government to take additional steps to prejudice the

3

void the Amended Protective Order issued in similar cases and proposed in this case.

Negotiating a new protective order that provides the same levels of access to clients and

protection of the attorney-client privilege could take weeks or longer, ultimately delaying

if not outright preventing counsel from being able to file a fair and accurate petition for

review under the DTA.    For this reason, this Court should issue a stay-and-abey order,

rather than dismiss this habeas action, while the DTA petition is being litigated.    The

protective order is especially critical in this case, where lead counsel, Jack Ratliff, has

only recently been granted security clearance.[9]  Because lead counsel did not have access

to his client, lead counsel has not had the opportunity to meet with Mr. Akhouzada. The

protective order is essential to assuring counsel the opportunity to acquire the necessary

facts to determine the need or lack thereof for a DTA petition.


**1.  It Would Be Premature for This Court to Dismiss Petitioners' Habeas Actions for Lack of Jurisdiction.**

Respondents argue that dismissal of this habeas action is consistent with the

established law of this Circuit (*Boumediene I*) as well as the clear intent of Congress

as expressed within the MCA.[10]   This argument fails to recognize that this Court does

---

position of petitioners in seeking review in this court, 'courts of competent jurisdiction,' including this Court, 'should act promptly to ensure that the office and purposes of the writ of habeas corpus are not compromised. '" *Boumediene II*, 127 S. Ct. at 1478 (quoting *Padilla v. Hanft*, 126 S. Ct. 1649, 1650 (2006)).

[9]

[10] "Petitioners' motions seek relief that is contrary both to the law of the Circuit that these cases should be dismissed for want of jurisdiction, and to the clear intent of Con-

not have jurisdiction over the merits of this case until the Court of Appeals issues its

mandate in *Boumediene I*, and that furthermore, the holding in *Boumediene I* is nei-

ther final nor binding upon this court.    Moreover, the constitutionality of the statute

is still being litigated.    As a matter of necessary predicate, the Supreme Court has

openly invited habeas counsel to exhaust all available remedies in order to re-petition

the Court for review.    Dismissal at this time would be premature.    Until the constitu-

tionality of the MCA has been resolved, it is more appropriate to stay these habeas

actions.

### A. *Boumediene I* Is Not Binding Upon This Court.

Because the Court of Appeals has not yet issued its mandate in *Boumediene I*, this

Court does not presently have jurisdiction over the merits of this case and cannot act on

the government's motion to dismiss.    The law of this circuit is that "[t]he filing of a no-

tice of appeal, including an interlocutory appeal, 'confers jurisdiction on the court of ap-

peals and divests the district court of control over those aspects of the case involved in

the appeal.'"[11]

The *Boumediene* petitioners have asked the court to stay the issuance of its man-

date pending the completion of DTA proceedings and the filing of a renewed petition for

certiorari to review the court's jurisdictional ruling in *Boumediene I*.    The court has not

yet acted on the motion.    This case is presently before the D.C. Circuit on an interlocu-

---

gress, expressed in the MCA, to withdraw District Court jurisdiction over the detainees'
habeas cases."    Motion to Dismiss at 1.

[11] *United States v. DeFries*, 129 F.3d 1293, 1302 (D.C. Cir. 1997) (quoting *Griggs v. Providence Consumer Discount Co.*, 459 U.S. 56, 58 (1982)).

tory appeal (No. 05-5398) and the government has moved to dismiss that case. But the "district court does not regain jurisdiction over those issues until the court of appeals issues it mandate."[12]

Moreover, this Court is not obligated routinely to apply the Court of Appeals' conclusions regarding the jurisdictional implications of the MCA. It has long been held that courts have jurisdiction to determine their own jurisdiction. This type of threshold jurisdictional determination, which must be made in each case based on its own facts, is precisely what the Supreme Court did in *Ex parte Milligan,* 71 U.S. 2 (1866). In discussing the authority of the courts to address Milligan's claims that a writ of habeas corpus should issue notwithstanding action that suspended the writ, the Supreme Court stated:

> The suspension of the privilege of the writ of habeas corpus does not suspend the writ itself. The writ issues as a matter of course; and on the return made to it the court decides whether the party applying is denied the right of proceeding any further with it.

*Ex parte Milligan,* 71 U.S. at 130-131. The Court then went on to consider whether the facts showed "that Milligan was a prisoner of war, and, therefore, excluded from the privileges of the statute." *Id.* The Court concluded that Milligan was not a prisoner of war and not covered by the suspension statute; therefore, the Court granted the writ. *Id.* Similarly, in *Duncan v. Kahanamoku,* 327 U.S. 304 (1946), the Court took jurisdiction and determined that the petitioner did not fall within the class of people to whom the Hawaiian martial law declaration applied. *See also United States v. Villato,* 2 U.S. 370 (C.C. Pa. 1797) (where prisoner

---

[12] *DeFries*, 129 F.3d at 1302. The reasoning is one of judicial economy. The so-called "mandate rule" "prevents the waste of judicial resources that might result if a district court, prior to the issuance of the appeals court's mandate, proceeds with a case, ruling on motions and hearing evidence, after which the appeals court reverses its original decision on rehearing." *DeFries* at 1303.

had not been naturalized, the writ was granted to free him from treason charge).   Nothing precludes this Court from conducting its own investigation into the jurisdictional issues involved in Petitioners' claims.

### B.   The Constitutionality of the MCA Is Currently Being Litigated.

Respondents argue that the law of the circuit is settled, but this is premised upon an incorrect interpretation of *Boumediene I.*     While the Court of Appeals based its decision in *Boumediene I* upon its reading of the MCA, the constitutionality of the MCA itself is still in dispute.   On February 20, 2007, a split panel of the Court of Appeals decided combined cases involving aliens imprisoned at Guantánamo Bay and held that post-*Rasul* statutes deprived courts of jurisdiction over the habeas actions brought by petitioners in those cases.[13]   The *Boumediene* petitioners filed a writ of certiorari and, on April 2, 2007, the Supreme Court denied certiorari, with both a three-Justice dissent and a statement respecting the denial of certiorari.[14]   In their concurrence, however, Justices Kennedy and Stevens held that, given the Court's "practice of requiring the exhaustion of available remedies as a precondition to accepting jurisdiction over applications for the writ of habeas corpus," denial of certiorari was appropriate "*at this time.*" (emphasis added)[15]   It therefore appears that five Justices will give serious consideration to a renewed petition for certiorari seeking review of the decision in *Boumediene I*, following petitioners' exhaustion of their DTA remedies.   A majority of the Supreme Court, in other words, has left open the possibility that the Court of Appeals'

---

[13] *Boumediene I ,* 476 F.3d at 981.

[14] *Boumediene II,* 127 S. Ct. 1478 (2007).

[15] *Id.* at 1478.

holding is erroneous and that the petitioners have the right to pursue habeas relief in the district courts.[16]

While Respondents dismiss this process as a "speculative chain of events,"[17] in reality, this process is well underway.   Two Supreme Court Justices have expressly invited an exhaustion of remedies, and the Court of Appeals singled out a failure to exhaust remedies as a reason for the dismissal of the petition of the *Boumediene* petitioners.[18]   There is nothing "speculative" about this; both holdings cited by Respondents as authorities for their motion to dismiss have implied that their holdings may have been decided differently had petitioners exercised this alternative option.   Until that option has been exhausted by scores of other habeas cases (including this one), *Boumediene I* should be treated as it is – the first in a series of many decisions involving distinct allegations and legal theories that may be taken into consideration, but are not binding upon any of the district courts.   *See Texas v. Cobb,* 532 U.S. 162, 169 (2001) ("Constitutional rights are not defined by inferences from opinions which did not address the question at issue."); *see also United States v. Booker*, 543 U.S. 220, 239-242 (2005) (limiting *stare decisis* effect of cases where constitutional issue was not raised or resolved).

---

[16] Indeed, the Supreme Court may reach these questions sooner, as there is a case currently pending before that Court that directly concerns the MCA jurisdictional holding of the Court of Appeals.   This case is an original habeas corpus petition in *In re Ali*, No. 06-1194, which challenges the MCA jurisdictional holding of the Court of Appeals.   The Supreme Court considered the *Ali* petition sufficiently serious that it directed the government to respond to the petition by April 16, 2007.

[17] Motion to Dismiss at 5.

[18] *Boumediene I*, 476 F.3d at 994.

**2.    The Court Has the Discretion to Issue a Stay-and-Abey Order, and Such an Order Is Mandated Where a Procedural Bar May Prevent Future Habeas Review.**

Staying this action is consistent with Supreme Court directives in the analogous situation when a federal court is presented with unexhausted habeas claims under 28 U.S.C. § 2254.   In *Rhines v. Weber,*[19] the Supreme Court explicitly approved the stay-and-abey procedure requested here by Petitioners in the context of federal habeas corpus proceedings.   The Court held that district courts have the discretion to issue stay-and-abey orders in lieu of dismissal where alternate remedies have yet to be explored in certain habeas actions.   Moreover, where there is (i) just cause, (ii) no intent to delay on the part of the petitioners, and (iii) a likelihood of success, it would be an abuse of discretion for the court *not* to issue a stay-and-abey order.

**A.    The District Court Has Discretion to Enter a Stay.**

In *Rhines*, the prisoner filed in federal court a mixed habeas petition, one containing both claims exhausted through the state court system and unexhausted claims.   The Court recited its precedent in *Rose v. Lundy,*[20] in which it imposed a requirement of "total exhaustion" with respect to mixed petitions and, on that basis, had directed the federal courts to dismiss mixed petitions without prejudice and instructed affected petitioners to present their unresolved claims in state court.[21]

---

[19] *Rhines v. Weber*, 544 U.S. 269 (2005).

[20] *Rose v. Lundy*, 455 U.S. 509 (1982).

[21] *Id.* at 522.

Yet the *Rhines* Court observed that, at the time of *Lundy*, there was no statute of limitations on the filing of federal habeas corpus petitions, which meant that petitioners could return to federal court following exhaustion of their state claims "with relative ease."[22]   Congress' enactment of a limitations period for federal habeas petitions after the *Lundy* decision meant that the petitioner's federal habeas claim could become procedurally barred, as the petitioner pursued unexhausted state claims following a dismissal without prejudice by federal court.   Recognizing that problem, the *Rhines* Court allowed district courts to issue stay-and-abey orders at their discretion.

As discussed above, this case and other pending habeas actions by Guantánamo prisoners now pending in this Court have a genuine prospect of further Supreme Court review to decide the federal courts' jurisdiction in their cases.   Petitioners' right to proceed by seeking a writ of habeas corpus, to the extent the Supreme Court may decide that right exists, could be impaired if this Court were to dismiss their petition now.   In this way, the situation is comparable to *Rhines*, where it was possible (yet not certain) that an otherwise valid federal habeas claim could be barred as a result of pursuing unexhausted claims in another forum.

**B.   It Would Be an Abuse of Discretion for This Court *Not* to Issue an Order to Stay-and-Abey, Pursuant to *Rhines*.**

Respondents attempt to minimize the significance of *Rhines* by stating that the Guantánamo habeas cases, unlike *Rhines*, do not involve "any temporal bar to a habeas

---

[22] *Rhines*, 544 U.S at 274.

petition," and the "authority of a court to enter a stay is constrained by statute."[23]  However, Respondents fail to note that the constitutionality of the operative statute in *Rhines* (the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA")) was not being actively litigated as part of the habeas petition, as it is here.   In fact, in the absence of intentional dilatory tactics by the petitioner, the *Rhines* Court went on to hold that "it would likely be an abuse of discretion to deny a stay and to dismiss" a petition if the petitioner has good cause for the failure to exhaust and the unexhausted claims are potentially meritorious.[24]   Petitioners in the present case satisfy all three preconditions – good cause, no deliberate delay, and potentially meritorious claims – under which failure to stay-and-abey would constitute an abuse of discretion.

First, there is good cause for the failure to exhaust. The questions left open in the Supreme Court's decision in *Rasul v. Bush*,[25] which established a right to proceed under § 2241 at the time Petitioners submitted their documents, and the subsequent DTA and MCA have resulted in major complexities that left the legal landscape opaque.   The Court of Appeals required several rounds of briefing over two years before it could issue its decision in February 2007.   Respondents argue that Petitioners could have pursued these petitions any time since the enactment of the DTA;[26] however, it should be noted that as of the *Hamdan* decision,[27] Petitioners, whose cases were filed well before the en-

---

[23]  Motion to Dismiss at 7.

[24]  *Rhines*, 544 U.S. at 278; *accord Pace v. DiGuglielmo*, 544 U.S. 408, 416-17 (2005).

[25]  *Rasul v. Bush*, 542 U.S. 466 (2004).

[26]   Motion to Dismiss at 7.

[27]  *Hamdan v. Rumsfeld*, 126 S. Ct. 2749 (2006).

actment of the DTA, had no reason to believe that their habeas petitions would be dismissed and that an alternative remedy would be necessary.   Petitioners thus had excellent reasons for not initiating the DTA procedures until the denial of certiorari in *Boumediene II.*

Second, Petitioners have done nothing to deliberately delay this case. Counsel filed Petitioners' petition for habeas corpus relief on October 14, 2006. Since then, Counsel have actively pursued resolution of this case.   Lead counsel, Jack Ratliff, was delayed in his investigation because he was waiting to receive security clearance. He was only granted full security clearance recently.   On March 6, 2007, Petitioners filed a Motion for the Immediate Issuance of the Writ of Habeas Corpus or alternatively a Motion to Show Cause why the Writ should not issue.

Third, the claims raised both in this Court and in the DTA Petition are potentially meritorious.   Counsel further believes that Petitioners have been improperly designated an enemy combatants, as Respondents have not provided any independent evidence suggesting that any of the Petitioners were engaged in or supporting hostile actions against the United States and its coalition allies between September 11, 2001 and the time of their capture.

Respondents argue that Petitioners have no statutory right to have their cases abeyed as they exhaust alternative remedies.[28]   Again, Respondents misinterpret the holding in *Rhines.*   By testing whether the DTA petition to the Court of Appeals provides an adequate substitute for their habeas proceedings in this court, Petitioners are

---

[28] Motion to Dismiss at 6.

challenging the constitutionality of the very statute Respondents are citing as the basis for dismissing said proceedings.   Not only is abeyance within this court's discretion, but given the good cause for delay, absence of dilatory tactics, and potentially meritorious claims, it would be an abuse of that discretion not to issue a stay-and-abey order.

**3.   Maintaining the Status Quo Is Necessary, As Dismissal Would Irreparably Harm Petitioners in Contravention of the Express Instruction of the Supreme Court.**

In denying certiorari in *Boumediene II*, Justices Kennedy and Stevens expressly charged courts, including this one, with a watchdog role.   In the event that the government was to "take additional steps to prejudice the position of petitioners in seeking review in this court," courts were tasked with "[acting] promptly to ensure that the office and purposes of the writ of habeas corpus are not compromised."[29]   In their Motion to Dismiss, Respondents seek to have this court dismiss the Amended Protective Order and all other access-related orders currently in place in similar habeas proceedings and requested in this proceeding and establish a brand-new set of procedures at the Court of Appeals level.   Such actions could cause irreparable damage to Petitioners' ability to exhaust their alternative remedies.   Were the new protective order proposed by Respondents in *Bismullah v. Rumsfeld*[30] implemented, it would have a

---

[29] *Boumediene II*, 127 S. Ct. at 1478 (quoting *Padilla v. Hanft*, 126 S. Ct. 1649, 1650 (2006))

[30] Protective Order, *Bismullah v. Rumsfeld,* No. 06-1197 at 36-37 (August 25, 2006) ("Documents marked 'legal mail' by counsel shall be subject to content review and secu-

chilling effect upon the attorney-client relationship, in that communications from counsel would no longer be privileged, but subject to screening and redaction by the Department of Defense.   In addition, counsel would be limited to three visits with their clients, after which they would presumably be cut off from ever seeing their clients again.   Negotiating a new protective order that ensured protection of attorney-client privilege and access to Petitioners could drag on for months; meanwhile, in the absence of a protective order, Respondents could deny counsel all access to their clients.   While jurisdictional issues are being settled, it is within the discretion of this court to maintain the status quo with respect to the protective order and counsel access procedures to ensure that communications between Petitioners and their client are not summarily terminated by a statute whose constitutionality is in the process of being litigated.

**A.   The Court Should Maintain the Status Quo Pending Resolution of Jurisdictional Issues.**

There is a long-established principle that, where the question of jurisdiction is still being settled, the courts have "authority from the necessity of the case to make orders to preserve the existing conditions and subject of the petition." *United States v. United Mine Workers,* 330 U.S. 258, 291 (1947) (quoting *United States v. Shipp*, 203 U.S. 563, 573 (1906)); *see also Kircher v. Putnam Funds Trust*, 126 S.Ct. 2145, 2155 (2006) (a federal court's adjudicatory authority includes "its authority to determine its own jurisdiction").   This Circuit has not hesitated to apply these principles:

---

rity and contraband screening by the DoD Privilege Team."), p 37 ("Counsel will be notified with respect to legal mail that, upon review, will be redacted or screened out.").

> Of course, whether or not there was jurisdiction to decide the merits, until the question of jurisdiction is determined, there was "authority from the necessity of the case to make orders to preserve the existing conditions and the subject of the petition ...." ... Clearly there was "power to preserve existing conditions while ... determining [the] authority to grant injunctive relief."

*In re President and Directors of Georgetown College,* 331 F.2d 1000, 1005 (D.C. Cir. 1964) (quoting *United States v. United Mine Workers*, 330 U.S. 258, 291 (1947)).

The District Courts have recognized that, regardless of the ultimate resolution of jurisdictional questions, the courts are authorized to enter orders necessary to the ultimate litigation. For example, Judge Leon, who found the rights of the prisoners extremely limited in scope, entered an order on the merits of Respondents' motion for filter team review of attorney-client material, denying the request (*Boumediene v. Bush,* 450 F. Supp. 2d 25 (D.D.C. 2006); Judge Robertson granted the same request on the merits in *Hicks v. Bush,* 452 F. Supp. 2d 88 (2006). Additionally, counsel in most of the Guantánamo prisoner litigation have been operating under the protective order first authorized by the District Courts in *Al Odah* for almost two years.[31]

**B.  Entering the Amended Protective Order is Necessary to Prevent Irreparable Harm to Petitioners' Claims.**

Entering the Amended Protective Order is necessary here in order to prevent irreparable harm.   This Court should carefully protect the Petitioner by entering the Amended Protective order entered to date in similar habeas cases to assure that Petitioners are not prejudiced in their ability to litigate the DTA action as well as to preserve potential remedies before this court.   The Protective Order, and the client access

---

31

provided therein, is absolutely critical for effectively exhausting Petitioners' remedies under the DTA.   Without the Protective Order in place, there is no legal mail channel; there is no privileged communication between attorney and client; base visits would be curtailed or eliminated; and counsel may be forced to destroy the classified documents currently in their position that have shed the only insight to date upon the factual bases for Petitioners' detention.   Absent the protections of the Protective Order, counsel will be unable to provide the Court of Appeals with sufficient factual information to make a balanced and informed decision regarding the merits of their DTA Petition.

Also, Respondents have signaled their intent to dramatically restrict prisoners' access to counsel, proposing a protective order at the Court of Appeals level that would, among other things, require all legal mail from counsel to Petitioners to be first screened and redacted by Department of Defense employees.   Secondly, counsel would be restricted to three visits with their clients. Third, Department of Defense officials would have unilateral authority to decide whether to permit counsel to see the evidence used to justify a prisoner's enemy combatant designation.

Counsel in similar habeas cases have labored under extraordinary circumstances to cultivate relationships with their clients. The Government's proposed protective order in *Bismullah* is a naked attempt by the government to impede prisoners from challenging the factual bases for their detention and return to a pre-*Rasul* state of the world.

The protective order is critical to foreclosing Respondents from prejudicing Petitioners' ability to litigate – at the District Court or Circuit Court level – these issues.   In the event the case is remanded, or if the DTA procedures prove an inadequate substitute

for constitutionally required habeas corpus procedures, this Court should be in position to proceed immediately on the issues raised.

**5.    The Petitions of Repatriated Petitioners Should Be Similarly Stayed or Transferred, as They Are Not Yet Ripe for Dismissal.**

Respondents allege that Petitioner Akhouzada is unknown to them. Even if Mr. Akhouzada is reported as unknown, his claimed should not be dismissed until Counsel can determine if Petitioner Akhouzada is currently being held. Counsel were told that Mr. Akhouzada is ISN #954 and would like to verify with the Respondents that this is not the case. However, for all of the reasons cited above, this Court should not dismiss his Petition.

In determining whether to grant certain equitable forms of relief in habeas actions, courts frequently evaluate whether the petitioner will suffer irreparable harm absent the relief requested. In *Kanivets v. Riley,*[32] a foreign national petitioned the District Court for a stay of removal pending habeas review. Relief was granted in part because the District Court found that petitioner would have been irreparably harmed had he been removed prior to full review of his habeas petition, as there was a possibility that the court "[might] find legal error"[33] warranting a reexamination of petitioner's application for asylum. Similarly, this Court in *Omar v. Harvey*[34] ordered injunctive relief preventing petitioner's transfer from U.S. military custody to the custody of Iraqi authorities, as he would have "[suffered] irreparable harm if his current habeas claim [was] eliminated or

---

[32] *Kanivets v. Riley*, 286 F. Supp. 2d 460 (2003).

[33] *Kanivets,* 286 F. Supp. 2d at 468.

[34] *Omar v. Harvey*, No. 05-2374, 2006 WL 286861 (D.D.C. Feb. 6, 2006).

mooted by the respondent's actions."[35]   This Court further noted that the "danger that the respondents could 'obviate' the petitioner's right to 'test the legitimacy of his executive detention' would certainly constitute a threat of irreparable harm."[36]

Dismissal would irreparably harm this Petitioner.   Under the DTA, petitions to the Court of Appeals may only be filed by persons currently imprisoned in Guantánamo. In the event that these actions are dismissed pursuant to *Boumediene I*, but the Supreme Court later finds the MCA to be unconstitutional, prisoners still in Guantánamo could move to reinstate their petitions or reapply for the writ.   However, Petitioner Akhouzada would be left with no further recourse.   Despite his possible repatriation, Petitioner Akhouzada's claims against the U.S. government have not been rendered moot because of, among other things, the collateral effects pursuant to having been labeled "enemy combatants," a designation that the U.S. government to this day refuses to retract.

Because the justification for dismissing these petitions is the same as that for dismissing those of Petitioner still imprisoned in Guantánamo, none of his actions should be dismissed.   Instead, Mr. Akhouzada's petition too should be stayed and abeyed pending exhaustion of his DTA action.

**Conclusion**

---

[35] *Id.* at 2.

[36] Id. (quoting *Lee v. Reno,* 15 F. Supp. 2d 26, 32 (D.D.C. 1998))

For the foregoing reasons, this Court should deny Respondents' Motion to Dismiss and enter the Amended Protective order entered in similar habeas cases and holding such litigation in abeyance pending the outcome of the Petitioners' DTA petitions.

Dated May 3rd, 2007.

Respectfully submitted,

Counsel for Petitioners:

Jack Ratliff*
Scott Sullivan
Rapoport Center for Human Rights
University of Texas School of Law
727 East Dean Keeton St.
Austin, TX 78705
Tel: 512 232 4857
Fax: 512 471 6988

Center for Constitutional Rights
Gitanjali S. Gutierrez
(Pursuant to LCvR 83.3(g))
666 Broadway, 7th Floor
New York, NY 10012
Tel: 212 614 6485
Fax: 212 614 6499

*Counsel for Petitioners*

* Lead Counsel



### CERTIFICATE OF SERVICE

I, Jack Ratliff, certify that I today caused a true and accurate copy of the foregoing to be served upon the following persons, by hand, in addition to an electronic notice of filing:

> U.S. Department of Justice
> Litigation Security Section
> Attn:  Erin Hogarty or Jennifer Campbell
> 20 Massachusetts Avenue, NW Ste 5300
> Washington, DC 20530
> (202) 514-9016

This 3rd day of May, 2007.

Jack Ratliff

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Abdul Gafoor Akhouzada,<br>    Detainee,<br><br>Abdul Salam,<br>    As the Next Friend of Abdul Gafoor<br>    Akhouzada<br><br>*Petitioners*,<br><br>    *v.*<br><br>GEORGE W. BUSH, *et al.*,<br><br>*Respondents*. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)     Civil Action No. 06-cv-01685 |

### PROPOSED ORDER

Upon consideration of Petitioners' Opposition to Respondents' Motion to Dismiss, it is

ORDERED that (1) the Respondents' Motion to Dismiss the habeas actions of Petitioners Abdul Gafoor Akhouzada and Abdul Salam is denied, and (2)) that these actions be held in abeyance pending Petitioners' exhaustion of their remedies in the Court of Appeals under the Detainee Treatment Act of 2005 and the filing in the Supreme Court of a renewed petition for certiorari to review the Court of Appeals' jurisdictional holding in *Boumediene v. Bush.*

IT IS SO ORDERED.

DATED:_____    _____

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Abdul Gafoor Akhouzada,<br>    Detainee,<br><br>Abdul Salam,<br>    As the Next Friend of Abdul Gafoor<br>    Akhouzada<br><br>    *Petitioners,*<br><br>    *v.*<br><br>GEORGE W. BUSH, *et al.*,<br><br>    *Respondents.* | Civil Action No. 06-cv-01685 |

### ORDER

Upon consideration of Petitioners' Memorandum of Understanding Regarding Access to Classified National Security Information filed March 31, 2007, as well as Petitioner's Opposition to Respondents' Motion to Dismiss, it is ORDERED that the Amended Protective Order and Procedures for Counsel Access to Detainees at the United States Naval Base at Guantanamo Bay, Cub, issued November 8, 2004 (344 F. Supp. 2d 174 (D.D.C. 2004)), the Order Addressing Designation Procedures for "Protected Information," issued November 10, 2004, and the Order Supplementing and Amending Filing Procedures Contained in November 8, 2004 Amended Protective Order issued December 13, 2004, in the *In re Guantanamo Bay Detainee Cases* shall be entered in this case.

IT IS SO ORDERED.

DATED: _____          _____